OSWEGO GENERAL TERM, May, 1848. *Pratt, Gridley, and Allen,* Justices.

### BUSH *vs.* PETTIBONE.

n order to justify a sheriff in discharging a prisoner in pursuance of an order of a judge, made for that purpose, the subject matter of the order must appear to be within the jurisdiction of the judge; and it must be the precise order which the statute authorized him to make.

n such case if the order is regular on its face, and such as the judge has power to grant, for the guidance of the sheriff, the latter may justify by the order alone; without showing that all the preliminary steps prescribed by law, to give jurisdiction, had been taken.

But where the officer claims to justify by the order alone, it should in itself cover the whole ground, and show enough to constitute a complete defence.

Under the provisions of the act to organize the state lunatic asylum, &c. passed April 7, 1842, a judge has no power to grant an order directing a sheriff to discharge a prisoner from imprisonment, on the ground of his being insane. He can only direct such prisoner to be sent to the lunatic asylum.

THIS was an action of debt brought against the defendant, as sheriff of the county of Cayuga, for the escape of one Norris King, from the custody of said sheriff, while under arrest by virtue of a writ of ca. sa. in the hands of the sheriff, in favor of the plaintiff, against said King. The defendant justified under an order made by the first judge of Cayuga county, discharging the said King from imprisonment, under the provisions of an act passed in April, 1842, to organize the state lunatic asylum. The issue was tried at the Cayuga circuit in March, 1847, before the Hon. B. WHITING, late circuit judge. The plaintiff, on the trial, proved the recovery of the judgment; the issuing of the ca. sa.; the arrest of King by the defendant as sheriff; and the escape. The defendant proved the signature of Joseph L. Richardson, and that he was first judge of the county of Cayuga, and offered to read in evidence the following paper writing or order signed by said Richardson.

"SUPREME COURT. *Norris King* v. *Isaac Bush.*

Application having been made to me, Joseph L. Richardson, first judge of Cayuga county, on the 6th day of June instant, by

Nelson King of Sempronius in said county, alleging that Norris King, the plaintiff in the above entitled suit, was imprisoned in the common jail of the said county of Cayuga, in the custody of the sheriff of the said county, by virtue of a writ of capias ad satisfaciendum issued out of the said supreme court, upon a judgment recovered therein against the said Norris King in the above entitled cause, and alleging that the said Norris King had become and was insane and praying for an examination into the mental state and condition of the said Norris King, under the provisions of the act entitled an act to organize the state lunatic asylum, and more effectually to provide for the care, maintenance and recovery of the insane, passed April 7, 1842, and having thereupon made an order appointing David Dimon and Lansing Briggs, two respectable physicians residing in Auburn in said county, to examine the said Norris King with respect to his alleged insanity, and having in said order directed the said physicians to appear before me at my office in Auburn on the 8th day of June, 1846, at 8 o'clock in the forenoon, to certify under oath their opinions respectively in relation thereto, and having also directed notice to be given to the said Isaac Bush that an examination would be had before me at the time and place last aforesaid, into the mental state and condition of the said Norris King, and it being made to appear to me by the affidavit of the said Nelson King, that the notice so directed to be given, together with a copy of the aforesaid order, was on the said 6th day of June instant personally served on the said Isaac Bush by the said Nelson King, and the said David Dimon and Lansing Briggs having this day appeared before me in pursuance of the aforesaid order, and certified under oath that they have carefully examined into the mental state and condition of the said Norris King, and particularly in reference to his alleged insanity, and in their opinion the said Norris King is insane, and being satisfied from the examination and certificate of the said David Dimon and Lansing Briggs, that the said Norris King is insane, and the said Isaac Bush not appearing to oppose his discharge ; therefore in pursuance of the provisions of the act entitled an act to organize the state lunatic

Bush *v.* Pettibone.

asylum and more effectually to provide for the care, maintenance and recovery of the insane, passed April 7, 1842, I do hereby order that the said Norris King be discharged from his imprisonment.                    J. L. RICHARDSON."

The plaintiff objected to the reading of said writing as evidence, on the ground that it was void for the several reasons appearing on its face; it not conforming to the provisions of the statute referred to in it, passed April 7, 1842. 1st. That said paper writing only showed that the first judge called *two respectable physicians,* and that it did not show that he called two respectable physicians, and other *credible witnesses;* or that *he invited the district attorney to aid in the examination,* according to the provisions of sections 32 and 33 of said act. 2d. That said paper writing showed that the first judge discharged the said Norris King from imprisonment; and did not show that he *ordered him into safe custody and to be sent to the asylum.* 3d. That said act being a jurisdictional act, the order and the proceedings on which it was founded should strictly comply with all the provisions and requirements of the act, in order to render it valid. The said objections were overruled by the circuit judge, and it was decided by him that said order was a justification to the sheriff for the escape; to which ruling and decision the plaintiff excepted. The writing was then read in evidence on the part of the defendant, and the service on the defendant proved. The defendant released King from imprisonment, and King so released, went away with his son. The circuit judge charged the jury that said writing was a justification to the defendant, as sheriff, for the escape of King. To which charge the plaintiff excepted, for the reasons urged against the admission of said paper writing as evidence. The jury found a verdict for the defendant. And the plaintiff made a bill of exceptions, and moved for a new trial.

*W. H. Jewett,* for the plaintiff.

*P. G. Clark,* for the defendant.

Bush *v*. Pettibone.

*By the Court,* PRATT, P. J. The only defence interposed to this action by the sheriff, was the order of Judge Richardson. No preliminary proof was adduced to show that the prisoner was insane, or, in the language of the statute, that he appeared to be so. In order to justify the defendant in discharging the prisoner, the subject matter of the order must appear to be within the jurisdiction of the officer granting it, and it must be the precise order which the statute authorized him to make. In such case, if the order, on its face, is such as the officer from whom it emanates has power to grant, for the guidance of another officer, the latter may justify by the order alone, without showing that all the preliminary steps prescribed by law to give jurisdiction, had been taken. (*Bennett* v. *Burch,* 1 *Denio,* 146.) It rests upon the principle that process regular on its face, is alone sufficient to justify the officer executing it. (*Savacool* v. *Boughton,* 5 *Wendell,* 170.) But to have this effect the order must be regular on its face—such as the officer making it was empowered to grant.

The insanity of the debtor, alone, would constitute no defence to an action for an escape; and the object of the statute under which these proceedings were had, is not merely to discharge the debtor from imprisonment, but rather to provide for his conveyance to, and confinement in the state lunatic asylum. (*Laws of* 1842, *p.* 141.) The main object is the debtor's restoration to reason; and his discharge from imprisonment is but incidental to the accomplishment of that object. If the order therefore had simply directed him to be sent to the asylum, perhaps it might have been a justification, but nothing appears in the order, or elsewhere, showing that the proceedings before the judge were instituted with that view, or resulted in the attainment of that object. For aught that appears in the order they were instituted simply for the purpose, on the part of the young man, of procuring his father's discharge from imprisonment, or for the purpose of taking him home and endeavoring to cure him there. The law allows a discharge from imprisonment for no such purpose. If the debtor was to be taken from the custody of the sheriff, it must be for the purpose of send-

ing him directly to the asylum, in order that his recovery from insanity might be effected as soon as possible.    The plaintiff had a right to a strict observance of the law ; as the same act gives him a right to re-arrest the debtor as soon as he recovers.    As the object of the imprisonment is to compel payment of the debt, and as payment could hardly be expected from the imprisonment of an insane man, the act may be considered as passed as well for the creditors as for the insane debtor.    If the party may be discharged from imprisonment without any direction for his safe keeping, he might, on his recovery, if he ever recovered, be beyond the jurisdiction of the court, and the reach of the plaintiff's process.    This could not have been the intention of the act.    It is insisted on the part of the defendant, that we are to presume that further directions were given in relation to the safe keeping and removal of the lunatic to the asylum.    But as the defendant claims to justify by the order alone, it should in itself cover the whole ground, and show enough to constitute a complete defence.    (12 *Mass. Rep.* 319.)    A new trial must therefore be granted.

---

Oswego Special Term, October, 1848.    *Pratt,* Justice.